UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOHANNA HORNING,

    Plaintiff,

v.

NANCY A. BERRYHILL (PREVIOUSLY CAROLYN W. COLVIN),
Acting Commissioner of Social Security,[1]

    Defendant.

No. 2:16-CV-00290-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 13. Ms. Horning brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II and her application for

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Horning's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Horning filed her applications for Disability Insurance Benefits and Supplemental Security Income in August 2014 and December 2014. AR 21, 200-208. Her alleged onset date is October 22, 2013, AR 21, 200, 202. Ms. Horning's applications were initially denied on December 3, 2014, AR 136-38, and on reconsideration on January 21, 2015, AR 141-51.

A hearing with Administrative Law Judge ("ALJ") R.J. Payne occurred on March 18, 2016. AR 39-90. On March 29, 2016, the ALJ issued a decision finding Ms. Horning ineligible for disability benefits. AR 18-38. The Appeals Council denied Ms. Horning's request for review on June 23, 2016, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Horning timely filed the present action challenging the denial of benefits, on August 12, 2016. ECF No. 3. Accordingly, Ms. Horning's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) &

416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

///

///

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Horning was 50 years old at the alleged date of onset. AR 30, 200, 202. She attended high school and received her GED. AR 30, 62. Ms. Horning is able to communicate in English. AR 30. The ALJ found Ms. Horning to suffer from major depressive disorder, anxiety disorder, substance abuse disorder in partial remission, morbid obesity, exercise-induced asthma, and migraine headaches. AR 23. Ms. Horning previously worked as a lab technician and a city bus driver. AR 30, 246, 316.

## V. The ALJ's Findings

The ALJ determined that Ms. Horning was not under a disability within the meaning of the Act from October 22, 2013, her alleged date of onset. AR 31-32.

**At step one**, the ALJ found that Ms. Horning had not engaged in substantial gainful activity since October 22, 2013 (citing 20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.). AR 23.

**At step two**, the ALJ found Ms. Horning had the following severe impairments: major depressive disorder, anxiety disorder, substance abuse disorder in partial remission, morbid obesity, exercise-induced asthma, and migraine headaches (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 23-24.

At **step three**, the ALJ found that Ms. Horning did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 24-25.

At **step four**, the ALJ found Ms. Horning had the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with these exceptions: (1) she can lift up to twenty pounds occasionally and lift or carry ten pounds frequently; (2) she can sit six hours and stand and walk six hours total, in any combination, in an eight hour workday with normal breaks; (3) she can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; (4) she can never crawl, or climb ropes, ladders, or scaffolds; (5) she should avoid concentrated exposure to loud noise, fumes, odors, dusts, gases, and poor ventilation, and avoid all exposure to hazards. She can understand, remember, and carry out simple routine repetitive work instructions; she can handle superficial contact with the general public; she could work with small groups of co-workers (4 to 6 in number) but not in a team-work type work setting; she could handle normal supervision, but no over-the-shoulder or confrontational type supervision; no fast paced or strict production-quota type work; and little or no change in the work setting. AR 25.

The ALJ determined that Ms. Horning is unable to perform any of her past relevant work. AR 30.

At **step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that she can perform. AR 30-31.

## VI. Issues for Review

Ms. Horning argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly assessing Ms. Horning's subjective complaint testimony credibility; (2) improperly weighing the lay statements of her friend, Rosa Lopez; and (3) improperly assessing Ms. Horning's residual functioning capacity, failing to pose a proper hypothetical to the vocational expert, and failing to identify jobs, available in significant numbers, that Ms. Horning could perform despite her functional limitations.

## VII. Discussion

**A. The ALJ Properly Discounted Ms. Horning's Credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Ms. Horning alleges; however, the ALJ determined that Ms. Horning's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 27.

The ALJ noted several activities of daily living that are inconsistent with Ms. Horning's allegations. Activities transferable to a work setting are a proper ground for questioning the credibility of an individual's subjective allegations. *See*

*Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

Ms. Horning testified that she cannot be around others and did not like to leave her house. AR 27, 80. However, the ALJ noted several inconsistencies with the alleged severity of her disability. In particular, the ALJ noted that Ms. Horning reported a fairly active social life, she has friends she sees regularly, she occasionally went out with friends and ex-coworkers, and she was able to fly across the country and go on a seven day cruise. AR 27, 76, 82, 693.

Additionally, Ms. Horning alleges a complete inability to work, but the ALJ found her activities and medical reports to not indicate a complete inability to work. AR 27. The ALJ noted that Ms. Horning has numerus pets that she cares for, including three dogs, she lives alone, and does her own shopping and chores. AR 27, 421-23. Further, the ALJ noted allegations contradicted by the medical record, stating that there is nothing to support her allegations of hand and feet limitations, and her alleged frequency of her migraine headaches is contradicted by the record which shows they have improved. AR 27, 668, 678.

In consideration of Ms. Horning's credibility, the ALJ noted the infrequency of her treatment. AR 26-27. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following

treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. When refusing prescribed treatment, the reasons presented for not following the treatment must be related to the mental impairment and not a matter of personal preference. *Id.* "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ points out that Ms. Horning has received little mental health treatment. AR 26. Ms. Horning received mental health counseling in an effort to keep her job, but stopped when she lost her job, then began again in October 2015 in order to obtain medical documentation for her disability claim rather than to improve her mental condition, and even then she refused to do group counseling. AR 26, 27, 693, 728.

The Court does not find the ALJ erred when assessing Ms. Horning's credibility because Ms. Horning's activities reflect a level of functioning that is inconsistent with her claims of disability, as well as inconsistencies with the record and a failure to treat her alleged impairments.

**B. The ALJ Properly Weighed the Lay Witness Testimony.**

Ms. Horning does not present this as an issue but she does quickly state, in her brief argument addressing her own credibility, that she takes issue with the ALJ's rejection of the functional report completed by Rosa Lopez. The opinion

testimony of Ms. Horning's friend, Rosa Lopez, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ afforded little weight to the testimony of Ms. Lopez in assessing the severity of Ms. Horning's impairments. AR 30. The ALJ noted that Ms. Lopez stated that Ms. Horning was not a people person, did not like to be outside, and spent a lot of time on the couch. AR 30, 270-77. However, the ALJ also notes that Ms. Lopez states that Ms. Horning went out with ex-coworkers for drinks on a fairly regular basis. AR 30, 274. The ALJ states that Ms. Lopez's report is also given little weight for the same reasons Ms. Horning was not found credible. AR 30. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding the ALJ's rejection of a lay witness for the same reasons the ALJ rejected the claimant's credibility); *See also Molina*, 674 F.3d at 1117.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

Additionally, the ALJ states that Ms. Lopez did not describe someone who is unable to work. AR 30.

The ALJ properly provided germane reasons for assigning little weight to Ms. Lopez's report. The ALJ properly rejected Ms. Horning's testimony and credibility, and as the information provided by Ms. Lopez is cumulative to that provided by Ms. Horning, the ALJ's well-reasoned explanations for rejecting Ms. Horning's testimony properly apply equally well to the assignment of little weight to Ms. Lopez's report.

**C. The ALJ did not fail to conduct a proper assessment at steps four and five of the sequential evaluation process.**

Ms. Horning briefly attempts to argue that her assessed residual functioning capacity, the hypothetical posed to the vocational expert, and the resulting step five finding did not account for all of her limitations, based on Ms. Horning's subjective complaints and testimony.

Ms. Horning contends that the ALJ failed to identify jobs, available in significant numbers that Ms. Horning could perform despite her functional limitations. Specifically, Ms. Horning contends that the hypothetical provided to the vocational expert is incomplete because it fails to take into account additional limitations from which she has suggested she suffers; however, the Court has already found no error in the ALJ's treatment of Ms. Horning's subjection

complaint testimony and determined that the ALJ properly discounted her credibility. *See supra* at 9-12. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The ALJ properly framed the hypothetical question addressed to the vocational expert. Additionally, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of Ms. Horning, given her limitations. Thus, the Court finds the ALJ met the step five burden and did not err in his analysis.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

///

///

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

3. **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 9th day of May, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16